UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW BARNES, JR.,

    Plaintiff,                                       Civil Action No. 13-11466

v.                                                HON. STEPHEN J. MURPHY, III
                                                  U.S. District Judge
                                                  HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Andrew Barnes brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be DENIED and that Plaintiff's Motion for Summary Judgment be GRANTED, remanding this case for further proceedings under the fourth sentence of 42 U.S.C § 405(g).

## PROCEDURAL HISTORY

Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on September 15, 2010, alleging disability as of March 1, 2008

(Tr. 128-131, 132-135). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on November 8, 2011 in Detroit, Michigan (Tr. 30). Administrative Law Judge ("ALJ") Ethel Revels presided (Tr. 30). Plaintiff, represented by Frank G. Cusmano, testified (Tr. 34-56), as did Vocational Expert ("VE") Stephanee Leech (Tr. 56-68). On January 26, 2012, ALJ Revels found that although Plaintiff was unable to return to his past relevant work, he could perform a significant range of unskilled work (Tr. 24-26). On February 2, 2013, the Appeals Council denied review (Tr.1-5). Plaintiff filed for judicial review of the final decision on April 1, 2013.

## BACKGROUND FACTS

Plaintiff, born April 15, 1958, was 53 when the ALJ issued her decision (Tr. 26, 128). He graduated from high school and worked previously as a fence company employee (Tr. 169). His application for benefits alleges disability as a result of blindness of the right eye, headaches, and concentrational difficulties (Tr. 168).

A.   Plaintiff's Testimony

Plaintiff offered the following testimony:

He currently lived at a "treatment facility" in Detroit, Michigan but was planning to move the following week to his daughter's house in Redford (Tr. 35). He did not receive education or training after graduating from high school (Tr. 36). He had not worked since ceasing work as a fence installer in March, 2008 (Tr. 36). The installer position required him to lift between 150 and 200 pounds (Tr. 37). He worked as a fence installer for a total of 16 years (Tr. 37). He stopped working in 2008 due to vision problems which caused

"tripping and falling" and the inability to "see things coming at [him]" (Tr. 38). He reported that the vision in his good eye was also worsening (Tr. 38).

The right eye blindness was the result of a 2007 injury[1] (Tr. 38). Plaintiff was able to work for several month after the injury, but ceased work at the point he lost all vision in the right eye (Tr. 38). After sustaining the injury to his right eye, the vision in his left eye also became worse (Tr. 38). After ceasing work as a fence installer, left eye vision problems prevented him from securing other employment (Tr. 39). He was currently receiving treatment for depression and hypertension (Tr. 39).

In response to questioning by his attorney, Plaintiff testified that for the last three months, he had been receiving inpatient treatment for alcohol abuse (Tr. 40-42). He denied drinking during the workday, but admitted that he had been "hung over" at work (Tr. 45). He stated that the alcohol abuse had been exacerbated by his mother's 2010 death (Tr. 44). At present, a typical day consisted of going to classes and seeing counselors during the day and attending meetings in the evening (Tr. 46). At the treatment facility, he was assigned to garbage detail (Tr. 46). He was housed in a basement dormitory with approximately 90 other residents (Tr. 46). Residents were required to submit to urine testing after returning to the facility after an outing (Tr. 47). Plaintiff's tests had been "clean" (Tr. 48).

---

[1]The treating records state that Plaintiff sustained the injury in 2006.

Plaintiff was being treated for depression and a psychotic condition (Tr. 49). His depressive episodes were characterized by feelings of hopelessness and reluctance to interact with others (Tr. 49). In regard to the psychosis, he experienced visual and auditory hallucinations (Tr. 50). His inpatient treatment reduced but did not eliminate the psychotic symptoms (Tr. 51). His current prescription for Cymbalta also reduced sleep interruptions (Tr. 51). He took over-the-counter Tylenol for biweekly headaches (Tr. 53). He also experienced concentrational problems requiring additional reminders to complete tasks and follow directions (Tr. 54).

### B. Medical Evidence

#### 1. Treating Sources

Ophthalmological records state that Plaintiff experienced a ruptured eye globe as a result of a laceration on August 25, 2006 (Tr. 211-213). In May, 2011, Plaintiff sought emergency treatment for facial lacerations sustained while being robbed (Tr. 242). Treating notes state that he appeared intoxicated (Tr. 242). Plaintiff admitted that he drank daily (Tr. 242). In August, 2011, he sought emergency treatment after being hit over the head while leaving a liquor store (Tr. 236). The same month, an eye examination report noted total blindness of the right eye and suspected glaucoma and a mild cataract in the left eye (Tr. 260). A Mariner's Inn "Master Treatment Plan" recommended referrals for social services, a mental health assessment, educational and vocational services, Alcoholics Anonymous, and medical care (Tr. 266). Intake assessment records created

the following month by Team Mental Health Services state that Plaintiff had not been treating previously for psychological problems (Tr. 246). He admitted to the current use of alcohol and the past use of crack cocaine (Tr. 246). He was diagnosed with a major depressive disorder with psychotic features and polysubstance dependence (Tr. 247). He was assigned a GAF of $50^2$ (Tr. 247). Plaintiff reported depression and alcohol abuse since the age of 20, but noted that losing his job and the death of his mother had exacerbated both conditions (Tr. 272). The same month, medical treating notes state that Plaintiff was currently prescribed Cymbalta for psychological symptoms (Tr. 249). Later the same month, Plaintiff reported continued hallucinations but that they were "less noticeable" (Tr. 305). The following month, a social worker noted that Plaintiff would be completing a successful 90-day stint on November 4, 2011 (Tr. 257). Plaintiff reported "he [was] feeling good not to drink anymore" (Tr. 262). Team Mental Health Services group and individual therapy notes from the same month state that Plaintiff responded well to treatment (Tr. 284, 298). Notes from a medication review by Psychiatrist John Head, D.O. state that Plaintiff continued to experience depression despite remaining "clean and sober" (Tr. 315). Dr. Head assigned Plaintiff a GAF of 50 (Tr. 315).

---

2

A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *Diagnostic and Statistical Manual of Mental Disorders--Text Revision,* 34 ("*DSM-IV-TR*" )(4th ed.2000).

### 2. Non-treating Sources

In October, 2010, Nick Boneff, Ph.D. performed a consultative psychological examination on behalf of the SSA, noting Plaintiff's reports of headaches and right eye blindness (Tr. 215). Plaintiff reported that he drank to calm his nerves and drank as much as he could afford (Tr. 216). He indicated that he once spent 90 days in jail for eluding police but had never been in prison (Tr. 216). He reported that other people annoyed him (Tr. 216). He reported sleep disturbances, hallucinations, and paranoia (Tr. 217).

Dr. Boneff noted that Plaintiff had to be reminded by his sister to keep the consultative exam appointment (Tr. 216). Dr. Boneff diagnosed Plaintiff with mixed personality disorder "with antisocial and dependent features" and blindness in the right eye (Tr. 218). He assigned Plaintiff a GAF of 48 with a guarded prognosis (Tr. 218).

Dr. Boneff concluded as follows:

> [Plaintiff] demonstrated little in the way of cognitive strengths, with difficulties with immediate and short-term memory and the capacity to pay attention, and also problems with concentration as evidenced by difficulties performing calculations accurately. He had problems with abstract thinking, and also difficulties with judgment and impulse control. He would appear to have a great deal of difficulty engaging successfully in work-type activities other than executing a one-step procedure on a repetitive basis with no requirement for independent judgment or decision-making. Success at such a task would of course be dependent upon his motivation to do so, which is somewhat questionable in my mind (Tr. 219).

The same month, Ernesto Bedia, M.D. performed a consultative physical examination of Plaintiff, noting blindness of the right eye and Plaintiff's reports of biweekly headaches lasting for approximately two hours (Tr. 222). A physical

examination was otherwise unremarkable (Tr. 223-229).

### C. The Vocational Expert

VE Stephanee Leech classified Plaintiff's former work as a fence installer as semiskilled and exertionally heavy[3] (Tr. 57). The ALJ then posed the following hypothetical question to the VE, taking into account Plaintiff's age, education and work experience:

> Our hypothetical claimant . . . needs work that is simple, repetitive tasks, which I am using to define unskilled work because there are moderate limitations in ability to maintain concentration for extended periods as well as to carry out detailed instructions, to remember and carry out detailed instructions. Our hypothetical claimant also needs work that does not require peripheral vision to the right, nor work requiring bilateral vision, nor work requiring good or normal depth perception. That work must not be with the general public, that work also must not be in close proximity to coworkers, as well as not as a member . . . of a team, that is wherein coworkers are unable to complete their task until our hypothetical claimant completes his task. That work must not require driving. Nor operating around dangerous machinery [,] not at hazardous heights nor operating around dangerous machinery. If you assume that, what jobs, if any, would our hypothetical claimant be vocationally . . . qualified to perform? (Tr. 57-58).

---

[3] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

The VE found that the above limitations would preclude Plaintiff's past relevant work, but would allow the individual to perform the unskilled medium work of laundry worker (1,000 jobs in the lower peninsula of Michigan) and food preparation worker (1,500) (Tr. 58-59). In the exertionally light category, the VE found that the hypothetical individual could work as a light food preparation worker (2,000) and material mover (1,000) (Tr. 59). She stated that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") and companion publications (Tr. 60).

In response to questioning by Plaintiff's attorney, the VE testified that most unskilled work required some degree of independent decision making (Tr. 67-68). She stated that the need to be off task 20 percent of the workday due to concentrational deficiencies would preclude all work (Tr. 68).

### D. The ALJ's Decision

Citing Plaintiff's medical records, ALJ Revels found that Plaintiff experienced the severe impairments of "loss of vision - right eye, depression, and alcohol abuse" but that none of the conditions met or medically equaled one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 17-18). The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC") for medium work with the following limitations:

> [C]laimant is unable to perform work that requires bilateral vision, peripheral vision, to the right, or good or normal depth perception. Claimant is limited to work involving simple, repetitive tasks (unskilled)

>  because of the moderate limitations in the ability to maintain concentration and moderate limitations in the ability to understand, remember, and carry out detailed instructions due to depressive symptoms.  Claimant requires work that does not involve working with the general public or work in close proximity to coworkers.  Claimant is unable to perform work as a member of a team, *i.e.*, where coworkers are unable to complete their tasks until claimant completes his task.  Claimant requires work that does not involve driving or working around dangerous machinery or at hazardous heights (Tr. 20).

Citing the VE's job numbers, the ALJ found that although Plaintiff was precluded from his former work, he could perform the exertionally medium work of a laundry worker and food preparation worker, and the light work of a food preparation worker and material mover (Tr. 24-25).

The ALJ discounted Plaintiff's alleged degree of limitation, noting that he was able to care for himself, make his bed, perform garbage detail, shop, pay bills, keep appointments, and watch television (Tr. 24).  She found that "[t]he visual acuity" in Plaintiff's left eye "d[id] not rise to the level of disabling" (Tr. 23).  She noted that Plaintiff had not experienced hallucinations since the month following his admission to inpatient treatment (Tr. 23).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir.  1985). Substantial evidence is more than a scintilla but less than a preponderance.  It is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff

has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### Substantial Evidence

Plaintiff makes a short but pointed argument that substantial evidence does not support the administrative findings. *Plaintiff's Brief* at 8-12. He contends that while the ALJ assigned "significant weight" to Dr. Boneff's opinion, her findings amount to a misreading of the consultative examiner's findings. *Id.* (citing 21-22, 216-219).

I agree. The ALJ began her discussion of Dr. Boneff's findings by citing his observations that Plaintiff exhibited a depressed mood and concentrational problems (Tr. 21). She also cited the portion of Dr. Boneff's conclusion that Plaintiff could perform "one-step procedure on a repetitive basis with no requirement for independent judgment or decision-making" (Tr. 22, 219). She continued by stating that she gave "significant weight" to Dr. Boneff's opinion that Plaintiff "retain[ed] the mental capability to perform unskilled work because the opinion is well supported by the objective findings and consistent with the medical record when viewed in its entirety" (Tr. 22). In regard to Dr. Boneff's findings, the ALJ later stated that while Plaintiff "demonstrated some difficulty with memory and concentration at the consultative examination, it was not enough to prevent the performance of simple tasks (Tr. 23). However, Dr. Boneff did not merely

limit Plaintiff to simple tasks or unskilled work. His conclusion, read in context, indicates that Plaintiff would be limited to a narrow range of unskilled work that precluded all jobs except those "executing a one-step procedure on a repetitive basis *with no requirement for independent judgment or decision-making*" (Tr. 219)(emphasis added).

Defendant argues, in effect, that the ALJ later modified her reliance on Dr. Boneff's findings by noting that the assessment was made before Plaintiff entered a treatment program. *Defendant's Brief* at 6-7. However, in finding that Plaintiff's condition improved somewhat after entering the homeless shelter (Tr. 23), she did not state that she was rescinding her earlier adoption of Dr Boneff's findings. Defendant, citing *Warner v. CSS,* 375 F.3d 387, 391-392 (6th Cir. 2004), argues that the ALJ was entitled to adopt only a portion of the findings. *Defendant's Brief* at 6-7. However, the ALJ stated only that she rejected Dr. Boneff's GAF score of 48 on the basis that it did not constitute a longitudinal picture of Plaintiff's condition (Tr. 23). She did not state that any other of Dr. Boneff's findings were rejected. The "significant weight" accorded to the consultative opinion, accompanied by an explanation of why one of its discrete findings was rejected, implies that the ALJ adopted the remainder of the consultative opinion.

Moreover, the significant weight apparently accorded to Dr. Boneff's conclusion undermines the vocational testimony at Step Five of the administrative sequence. The hypothetical question to the VE included the modifier of "simple, repetitive tasks," and work that would allow for moderate limitation in concentration, persistence, and pace (Tr. 57-58). The VE provided job findings based on these limitations (Tr. 58). However, in

–12–

response to Plaintiff's counsel, the VE acknowledged that if the hypothetical individual were also limited to jobs "with no requirement for independent judgment or decision making," as found by Dr. Boneff, "not very many" jobs would be available (Tr. 66). The VE later stated that "there would not be any jobs in the competitive market" that did not require independent decision making (Tr. 67-68).

The Court is mindful that the ALJ was not required to accord controlling weight to Dr. Boneff's opinion. As an examining rather than treating source, his opinion was "entitled to no special degree of deference." *Barker v. Shalala,* 40 F.3d 789, 794 (6th Cir.1994) (citing *Atterberry v. Secretary of Health & Human Servs.,* 871 F.2d 567, 572 (6th Cir.1989)). However, given the "significant weight" that the ALJ in fact accorded Dr. Boneff's findings, the omission of reference to his most critical findings from the hypothetical question to the VE constitutes error. "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [the] plaintiff's individual physical and mental impairments." *Id*. at 779 (internal citations omitted); *See also Webb v. Commissioner of Social Sec*. 368 F.3d 629, 632 (6th Cir. 2004). Because the VE's responses constitute the only evidence supporting a Step Five determination, the hypothetical question must be supported by record evidence. *Teverbaugh v. Comm'r of Soc. Sec.,* 258 F. Supp. 2d 702, 706 ( E.D. Mich. 2003)(Roberts, J.). While I am mindful that the ALJ was not required to read Dr. Boneff's conclusion *verbatim* to the VE, *See Webb, supra,* the omission of the limitation of "no requirement for independent judgment or

decision making" (or words to that effect) from the hypothetical question casts doubt on the job testimony.

A number of the ALJ's additional findings stand at odds with Dr. Boneff's opinion. For example, in support of the non-disability finding, the ALJ cited Plaintiff's admission that he could handle a checkbook, pay bills, and count change (Tr. 21, 154). However, Dr. Boneff found that due to concentrational problems and substance dependence, Plaintiff would be unable to handle his own benefit funds (Tr. 218). Further, while the ALJ noted Plaintiff's testimony that he was able to keep appointments, take out the garbage and make his own bed, at the time of the hearing he was currently living in a highly structured setting in which most of his waking hours were spent attending classes and meetings (Tr. 46). Plaintiff's ability to function within an institutional setting provides minimal insight into whether he could function independently.

Based on the present record, the Court cannot determine with certainty whether the ALJ intended to adopt the bulk of Dr. Boneff's findings, or adopt discrete findings and reject his conclusions. Clarification on this point is required, given that the adoption of Dr. Boneff's conclusion that Plaintiff was limited to work requiring no independent judgment would result in a finding of disability. An ALJ "must articulate, at some minimum level, [her] analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Lowery v. Commissioner, Social Sec. Administration,* 55 Fed.Appx. 333, 339, 2003 WL 236419, *5 (6th Cir. January 30, 2003); *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir.1995). As such, a remand is required. However, because the present transcript does not establish

an "overwhelming" case for disability, the errors discussed herein, while critical, do not automatically entitle the Plaintiff to an award of benefits. *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171 (6th Cir. 1994). Accordingly, the case should be remanded to the administrative level for further proceedings consistent with this opinion.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be DENIED and that Plaintiff's Motion for Summary Judgment be GRANTED, remanding this case for further proceedings under the fourth sentence of 42 U.S.C § 405(g).

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length

unless by motion and order such page limit is extended by the court.   The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: February 11, 2014            s/R. Steven Whalen
                                    R. STEVEN WHALEN
                                    UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on February 11, 2014, electronically and/or by U.S. Mail.

                                    s/Michael Williams
                                    Case Manager to the
                                    Honorable R. Steven Whalen